**SEALED**

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

FEB 12 2019

JULIA C. DUDLEY, CLERK
BY: /s/ [signature]
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Stored electronic data contained in a
Samsung Galaxy J7 Cellular Telephone with
IMEI # 355077080733586

Case No. 1:19mj20

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment "A"

located in the ___Western___ District of ___Virginia___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, USC, Section 841 | Distribution of Controlled Substances |
| Title 18, USC, Section 924(c) | Possession of Firearm During and In Relation To Drug Trafficking Crime |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ [signature]*
Applicant's signature

Special Agent Peter Gonzalves
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/12/19

City and state: Abingdon, VA

*/s/ Pamela Meade Sargent*
Judge's signature

Honorable Magistrate Judge Pamela Meade Sargent
*Printed name and title*



CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

FEB 12 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Abingdon Division

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR THE SEARCH OF STORED ELECTRONIC DATA CONTAINED IN A SAMSUNG GALAXY J7 WIRELESS TELEPHONE WITH IMEI# 355077080733586 | **UNDER SEAL**<br><br>1:19-sw-mj 20 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Peter Gonzalves, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for stored electronic data contained in a Samsung Galaxy J7 Wireless Telephone with IME # 355077080733586, taken from the person of J'Tavious WILLIAMS subsequent to his arrest on February 20, 2018 [21 PFC PMS 2/12/19]. The Telephone is currently in the custody of the Marion, VA Police Department and located in the Western District of Virginia.

2. I am a Special Agent with the Bureau of Alcohol Tobacco Firearms and Explosives ("ATF") and have been so employed since August 2016. I am currently assigned to the Bristol, Virginia Field Office. Prior to becoming an ATF Special Agent, I was a Special Agent with the US Department of State, Diplomatic Security Service for approximately six years. I have taken part in numerous federal, state, and local investigations

concerning document and identity fraud, financial fraud, cyber crimes, and firearms and narcotics violations.

3. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code, and am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18 United States Code.

4. During my tenure in law enforcement, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds and the organization of drug conspiracies. In the course of conducting these investigations, your affiant has been involved in the use of the following investigative techniques: interviewing confidential sources and cooperating witnesses; conducting physical surveillance: controlled buys; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register data; requesting, collecting and analyzing billing records; and conducting court-authorized electronic surveillance. Further, I have participated in the preparation, presentation and execution of numerous search and arrest warrants which have resulted in the recovery of weapons, narcotics, money and documentary evidence indicative of firearm and narcotic trafficking organizations. Additionally, I have assisted in investigations and arrests leading to convictions for violations of federal and state firearms and narcotics laws.

5. Through instruction and participation in investigations, I have become familiar with the manner and methods by which narcotics traffickers conduct their illegal business and the language and terms that are used to disguise conversations about their narcotics activities. From experience and training, I have learned, among other things, that in conversations narcotics traffickers believe susceptible to interception, they virtually never expressly refer to the illegal drugs by name; instead to conceal the true nature of their illegal activities and to thwart detection by law enforcement, they refer to the drugs and drug quantities using seemingly innocent terms.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts, as set forth in this affidavit, there is probable cause to believe that J'Tavious WILLIAMS has committed violations of Title 21 U.S.C. § 841(a), and 18 U.S.C. § 924(c). There is also probable cause to search the information described in Attachment A for evidence, contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

8. On February 1, 2018, officers with the Marion, VA Police Department (MPD) responded to a report of shots fired in the area of 557 South Church St, Marion, VA. Responding

officers were able to locate little in the way of witness information, but recovered several 9mm shell casings from the driveway at 557 S. Church St. 911 callers were unable to give any description of the shooter or the vehicle he/she left in, but stated the shooter came from the upstairs apartment. At the time of the incident, WILLIAMS resided in the upstairs apartment at that location.

9. On February 8, 2018, MPD Officer Yonts conducted a traffic stop of a vehicle in the town of Marion, VA. As a result of the investigation stemming from that stop, Officer Yonts seized a Taurus PT111 Millennium G2 9mm semiautomatic pistol, S/N TKN91612. The individual who possessed that pistol is a known associate of WILLIAMS.

10. On February 20, 2018, a concerned citizen showed MPD Officer Yonts a video posted by WILLIAMS to his Snapchat account. The video depicted WILLIAMS with suspected marijuana, large amounts of US currency, and what appeared to be a Glock handgun with an extended magazine. On February 21, 2018, Officer Yonts obtained a state search warrant for WILLIAMS' residence, located at 557 South Church St, Marion, VA. Deputies with the Smyth County Sheriff's Office (SCSO) and ATF SA Gonzalves assisted MPD officers with executing the warrant. Officers recovered suspected marijuana, US currency, scales, plastic bags, several cell phones, and a Taurus revolver from the apartment. Officers also recovered a Taurus 9mm semiautomatic pistol magazine, which was stamped with "PT111." This magazine was located in a suitcase in WILLIAMS' bedroom. WILLIAMS was not present in the apartment when officers

arrived to execute the warrant. MPD officers later located WILLIAMS a short distance from the apartment and took him into custody based on evidence located during the search.

11. After completing the search at the residence, MPD officers transported WILLIAMS to SCSO for processing and an interview. Officer Yonts and I conducted the interview, which was audio and video recorded. At approximately 5:36 PM, Officer Yonts advised WILLIAMS of his Miranda rights. WILLIAMS then agreed to speak with investigators.

12. Officer Yonts began the interview by outlining the evidence located in WILLIAMS' apartment and the charges he could be facing as a result. At that time, WILLIAMS stated he did not wish to comment on the drugs and other evidence found in the apartment. When asked about the shooting that took place outside his apartment a few weeks prior, WILLIAMS denied any involvement and stated he was at his girlfriend's house at Marion Manor at the time. WILLIAMS further stated he knew little about it, and heard about it from his mother upon his return to his residence. Officer Yonts asked WILLIAMS about the handgun located during the search. WILLIAMS indicated he had it for protection, and had never fired it before. SA Gonzalves asked WILLIAMS if he had any other firearms in his possession, which he denied. He also denied having any other firearms recently. WILLIAMS further stated he sells drugs, so anybody could come to his residence to try and rob him. WILLIAMS would not reveal who he purchased the firearm from, but did state he

paid approximately $300 cash. WILLIAMS then stated he purchased it in Bristol, TN approximately 1.5-2 months ago, but declined to provide the name of the person he bought it from. SA Gonzalves asked WILLIAMS about the Taurus 9mm magazine located in the apartment during the search. WILLIAMS stated he had a Taurus 9mm pistol, but recently sold it for approximately $250. WILLIAMS declined to state who he sold it to, and could only describe it as small, black and "carried well." SA Gonzalves told WILLIAMS about the 9mm shell casings recovered from the driveway of his apartment and the bullet holes in houses in the neighborhood, and WILLIAMS responded by saying he wasn't the one doing the shooting. Officer Yonts asked WILLIAMS if the person he sold the Taurus to is a felon, and WILLIAMS stated he is certain they are not. WILLIAMS further stated he just saw the guns and drugs as money, nothing more. SA Gonzalves asked WILLIAMS if he sold anything other than marijuana, which WILLIAMS denied. WILLIAMS stated he just received about 2 ounces of marijuana "a couple days" ago.

13. When asked about a Glock with an extended magazine, WILLIAMS began to fidget in his chair and denied having one. WILLIAMS also refused to discuss the current location of the Glock officers were referring to or who may have possession of it. WILLIAMS went on to state someone tried to sell it to him, but he didn't want it and chose not to buy it. SA Gonzalves began explaining what charges WILLIAMS could potentially be facing, and WILLIAMS interrupted stating he fired the shots that left the shell casings recovered in the driveway after the shooting on February 1, 2018. WILLIAMS further stated somebody went to his house and robbed him of an ounce

of marijuana. WILLIAMS was in his apartment with friends playing video games when an individual showed up and asked to buy an ounce of marijuana. That individual told WILLIAMS the money was in the car, and he'd be right back with it. WILLIAMS further stated the individual was gone a long time, and he told his mom he'd start shooting if the person robbed him. At that point, someone at the apartment told him the brake lights came on in the vehicle, and WILLIAMS stated he then ran downstairs and started shooting at the vehicle. WILLIAMS clarified two individuals came into the apartment from the car. He also stated he knew the individuals, and believed he could trust them. WILLIAMS then stated he had the Taurus 9mm pistol zipped up in his jacket pocket, and started shooting it at the car as soon as he reached the bottom of the stairs. WILLIAMS further stated he didn't even see what kind of car it was because it was dark out. Officer Yonts informed WILLIAMS that officers located 2 different types of shell casings in the driveway after the shooting. WILLIAMS stated he wasn't aware of anyone else firing shots during that incident. When asked to describe the rounds loaded in the gun, WILLIAMS stated the casings were silver and he believed the bullets were hollow points. WILLIAMS also remarked there were 4 cartridges left in the Taurus 9mm pistol when he sold it to his friend. WILLIAMS clarified the vehicle he was shooting at was silver, but he didn't know what kind of car it was. WILLIAMS also stated he knew the two individuals who came into the apartment, but wouldn't say who they were.

14. While discussing the revolver officers located in WILLIAMS' bedroom, WILLIAMS stated he had recently been robbed and had that revolver for protection. WILLIAMS

then agreed shooting at a vehicle leaving his residence would not classify as self defense. WILLIAMS would not give up a name as to who brought the Glock to his house, but stated the individual drives a white Chevy Tahoe. The individual is from Bristol, and WILLIAMS met him at a party. WILLIAMS described him as a white male with a couple tattoos and brown hair with a buzz cut. His stature is 5'10"-6'1" and about 240 pounds. WILLIAMS denied having any contact information from this individual. WILLIAMS also stated he bought the Taurus revolver from this individual.

15. When asked about his marijuana supplier, WILLIAMS stated he goes to Bristol, TN to pick up. He further stated he has a couple of suppliers, and meets them around town. He wouldn't elaborate as to who he buys from, where he meets them, or who drives him. WILLIAMS further stated he sells drugs, and the items located in the apartment came from his bedroom.

16. After completing the interview, Officer Yonts brought the marijuana recovered from the apartment and conducted a field test. The sample field tested positive for marijuana. Officer Yonts explained the charges WILLIAMS would be facing at that time. WILLIAMS went on to state he sold the Taurus pistol from the shooting to his friend because it was "too hot." He also mentioned the cash from his bedroom was approximately $5000.

17. On April 6, 2018, MPD Lt. Hamm obtained and executed a state search warrant to recover projectiles from Victim 1's vehicle. Lt. Hamm was able to recover projectiles and projectile fragments from the vehicle. While Lt. Hamm was searching Victim 1's vehicle, SA Gonzalves interviewed Victim 1. At the time of the shooting, Victim 1 was reclined and asleep in the front passenger seat of the silver Dodge Magnum. Victim 1 further stated Victim 2 was driving and Victim 3 was in the back seat. Victim 1 awoke to the sound of gunshots as the car was pulling out of the driveway of 557 S. Church St, Marion VA. Victim 1 reported hearing approximately 5-6 gunshots. Victim 1 stated Victim 3 had about half a sandwich bag of marijuana. Victim 1 denied witnessing anyone in the car with a weapon or firing any shots. Victim 1 stayed down in the car and wasn't able to see who was shooting or where the shots were coming from. Victim 1 believed the car made a right turn out of the driveway of the 557 S. Church St. location. Victim 1 also believed Victim 3 had stolen some marijuana from WILLIAMS. Victim 1 reported waking only when a bullet struck the passenger side door. When asked why they were at that location, Victim 1 stated the only reason was to give Victim 3 a ride there.

18. On November 30, 2018, MPD Officer Yonts provided SA Gonzalves with copies of reports from the Virginia Department of Forensic Science in reference to the Taurus 9mm pistol believed to be used in the 557 S. Church St. shooting. In summary, the reports show the majority of casings collected from the scene and projectiles later recovered from Victim 1's vehicle match the Taurus PT111 Millennium G2 9mm Pistol, S/N TKN91612 that MPD recovered from WILLIAMS' associate.

19. On November 30, 2018, Officer Yonts browsed public content on WILLIAMS' Facebook page. Officer Yonts located a "Facebook Live" video on the page from October of 2018. Officer Yonts observed WILLIAMS appearing to video himself riding in the back seat of a vehicle having a conversation with an individual in the front of the vehicle. At one point, an individual in the front seat asks WILLIAMS to sell her marijuana. WILLIAMS agreed, and they proceed to WILLIAMS' residence. Officer Yonts recognized the residence in the video as 716 S. Church St, Marion VA. WILLIAMS appears to use a key to open the front door of the house. Upon entering the residence, WILLIAMS continued narrating the video and stated "I'm at the crib." Based on my training and experience, I know the term "crib" is a euphemism for a person's home. WILLIAMS moves to what appears to be the living room couch. He then points the camera at the couch, where an AK-47 style semiautomatic rifle is displayed prominently next to what appears to be a box of ammunition. While continuing to narrate, WILLIAMS retrieved what appears to be marijuana from a plastic bag. He also stated he upgraded from a pistol to a "K," which I believe to be in reference to the AK-47 shown earlier in the video. Moments later, WILLIAMS walked back outside the residence and got back into the vehicle he was previously riding in. Once WILLIAMS got back into the vehicle, someone in the front seat made a remark about the vehicle now smelling like "weed." At that point, WILLIAMS told the front seat occupants not to use the word "weed" on his Facebook Live.

20. On or about January 25, 2019, SA Gonzalves went to Highland Arms in Abingdon VA. Highland Arms is a licensed firearms dealer, and accordingly holds a Federal Firearms License. SA Gonzalves obtained copies of firearm purchase forms, including an ATF Form 4473 (Firearm Transaction Record), documenting WILLIAMS' purchase of a Century Arms C39V2 AK-47 style semiautomatic rifle on October 13, 2018. According to the documents, WILLIAMS presented his Virginia Department of Motor Vehicles (DMV) issued driver's license (DL). SA Gonzalves performed a query of the DMV database, and the DL number listed on the form is assigned to WILLIAMS. Additionally, the rifle shown in WILLIAMS' Facebook Live video is consistent with advertisement photographs displayed on the Century Arms public website of their model C39V2 rifle.

**WIRELESS TELEPHONES**

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and

storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. The current generation of "smartphones" also provides the capability to employ Third Party Applications (apps) to provide additional messaging, voice communication, and media capabilities. The aforementioned data can also be located on a device contained within these apps.

22. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on cellular telephones seized because Data on the device can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used

them, and when. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.

23. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer or wireless telephone is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

24. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

25. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical

intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26. Based on the forgoing, I request that the Court issue the proposed search warrant.

27. This Court, the United States District Court for the Western District of Virginia, has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.

## REQUEST FOR SEALING

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*/s/ PG/*

Special Agent Peter Gonzalves
Bureau of Alcohol, Tobacco, Firearms, and Explosives
United States Department of Justice

Subscribed and sworn to before me on ____February 12____, 2019

_____
HONORABLE JUDGE PAMELA MEADE SARGENT
UNITED STATES MAGISTRATE JUDGE IN THE
WESTERN DISTRICT OF VIRGINIA

# ATTACHMENT A

The property to be searched is a Samsung Galaxy J7 Cellular Telephone with IMEI 355077080733586, hereinafter "The Device". The Device is currently located at the Marion Police Department in Marion, VA, which is within the Western Judicial District of Virginia.

This warrant authorizes the forensic examination of the Device and stored electronic data contained therein for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1. All records on The Device described in Attachment A that relate to violations of Title 21 U.S.C. § 841(a), and 18 U.S.C. § 924(c) and involve J'Tavious WILLIAMS, including:

   a. lists of customers or suppliers, their phone numbers or social media identifiers, and related identifying information;

   b. types, amounts, and prices of drugs or firearms trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs or firearms (including names, addresses, phone numbers, or any other identifying information);

   d. Text messages or third party application data, including photographs or videos, relating to the distribution of controlled substances, firearms, violent crimes and any conspiracy to distribute controlled substances or firearms;

2. Evidence of user attribution showing who used or owned The Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, third party application data and browsing history.